## MOORE *v.* DAVIS.

An action on the *case*, is the proper remedy to recover damages occasioned by withholding from the party entitled to possession real estate which the defendant had promised to vacate upon a fixed day.

Where a tenant agreed with his landlord, who was about to sell the premises at auction, that he would deliver possession of the same upon a fixed day, before the expiration of his term, to such person as should become the purchaser, and, being present at the sale, made a statement to that effect, and the plaintiff became the purchaser, relying upon such agreement of the tenant, who had full knowledge thereof, *held* that the purchase of the property by the plaintiff was a sufficient legal consideration for the tenant's promise.

A deed offered in evidence to prove the plaintiff's title, is competent for the consideration of the jury, and may be taken to their room with such other documentary evidence as is ordinarily committed to the custody of a jury, notwithstanding the deed contains conditions and reservations not binding upon the defendant; the jury being instructed that the deed is only competent to prove the plaintiff's title to the premises, and is not to be considered at all, upon any other point.

Where the intention of a person becomes material, such person, being otherwise competent as a witness, may testify to that intention, unless prevented by some controlling principle of law applicable to the particular case.

Where the evidence was conflicting upon the question, whether a party verbally agreed to deliver possession of certain premises upon a fixed date, in consideration of the plaintiff's purchase of the same at auction, the testimony of the plaintiff's agent that he should not have bid upon the property at all, but for the assurance that possession would be delivered at the time agreed upon, was *held* admissible, as bearing upon the probabilities of the case, to show whether or not the alleged agreement was made.

In an action to recover damages for the breach of an agreement to deliver possession of premises to the purchaser upon a fixed day, the jury may consider in their assessment, all such consequential damages as are the fair, legal and natural result, under all the circumstances, of the breach of the defendant's agreement.

CASE. By Ariel K. Moore against Orrin B. Davis. The declaration was to the effect that on the 28th of July, 1866, the defendant was and for a long time had been in the occupation of a hotel and livery stable in Franklin, as the tenant of one Daniell; that on said 28th of July the defendant, for a valuable consideration, promised said Daniell and any person who should be the purchaser of said property (the same having been advertised to be sold at auction on that day) that he would vacate and deliver up the premises to such purchaser on the first day of October following, (1866); that the plaintiff, relying on this promise became the purchaser, on said 28th of July, and from that time following, to said 1st of October made due and proper preparations for removing his business to said hotel and livery stable occupied by the defendant, designing himself to occupy the same as and for a hotel and livery-stable; but the defendant, in violation of his promise, and without right refused for the space of two months to vacate and deliver up the premises, and so, without right kept the plaintiff out of the occupation and enjoyment of the same; by means whereof he was compelled to expend large sums of money to provide himself and family with a suitable house, and to provide accommodations for his horses and carriages, and was prevented from making suitable and necessary repairs on the buildings and was otherwise greatly injured.

The defendant filed a general demurrer, which was overruled by the court, to which the defendant excepted and then pleaded the general issue.

It appeared in evidence that the defendant had occupied the premises described in the declaration for fourteen years; that he had a written lease the first year, but never after that; that for several years past he occupied as tenant to one F. H. Daniell, under a verbal lease, hiring by the year, but paying rent quarterly; and that said premises were sold by said Daniell to the plaintiff, at auction, June 16, 1866, and the plaintiff's evidence tended to show that the defendant agreed with said Daniell, before said sale, that he would leave said premises by the first of October, 1866, so that the purchaser might have possession on that day, and that when the premises were sold, several reservations and conditions were specified, among which was this, that the defendant should occupy said premises until the first day of October then next, said defendant paying rent for that time to the purchaser, and that said purchaser should have possession on or before said day; that said Davis was present at the sale, and there stated that the purchaser should have possession by said first day of October, and that the sale was made upon those conditions, with the full knowledge and consent of said defendant. While the evidence for the defendant

tended to show that Davis and Daniell had had an arrangement for many years that either party, desiring to terminate the tenancy, should give to the other party six months' notice, and that when Davis and Daniell had their talk before the sale, Daniell desired him to leave as early as possible ; that Davis claimed his six months' ; but that he finally agreed to leave on the first day of the next October, if he could, but would not waive his right to six months' notice, and that all that the defendant said, at the sale, was that he would leave by the first day of October if he could, but should waive no rights to the six months' notice, and it did not appear that there was any pecuniary or other special consideration for this agreement or promise ; but the plaintiff claimed that all the right to require notice was thus expressly waived, and that, in consequence of this promise, no notice was given, and no legal proceedings had or to be had.

J. R. Rowell bid off the premises, at the auction, for the plaintiff, and the deed was given to the plaintiff. After Rowell had stated the terms and conditions of the sale, as stated by the auctioneer and by Davis both, he was allowed, subject to the defendant's exception, to state that he should not have bid upon the property at all, but for the fact that he was to have the possession by the first day of the next October, and the defendant also objected to all the evidence offered by the plaintiff tending to prove any agreement by him to leave the premises on the first day of October, as inadmissible under the plaintiff's declaration, and as not pertinent in this form of action ; but it was admitted, subject to exception.

The deed from Daniell to the plaintiff, of the premises in question, was dated the day of the sale, and, after describing the premises conveyed, contained the following reservation : "Reserving the woodshed connected with the ell of the house, which is the property of said O. B. Davis, also reserving the possession of said premises to said Orrin B. Davis until October 1st, 1866, he paying to said grantee the rent for the same, according to the terms heretofore agreed upon ; also reserving to said Davis all the garden vegetables and other garden crops on the premises the present year, with the right to take the same from the ground after said October first." The plaintiff, to prove title to the premises, offered this deed in evidence, and the defendent objected that he had no knowledge of the contents of the deed, and offered to admit and did admit that the plaintiff had a good title to and was the owner of the premises in questions. But the court admitted the deed, subject to exception, and also allowed the jury to take this deed to their room with the other in the case, subject to exception, but instructed the jury that the deed was only competent to prove the plaintiff's title to the premises ; that, for that purpose, the plaintiff had a right to introduce it and have it considered ; but that, in settling the question as to whether Davis agreed to give possession of the premises on the first day of October, this deed would not only not bind the defendant by its conditions and reservations, but that it was not competent evidence to be considered at

all upon that point; and that, in settling that question, they must lay the deed entirely out of the case.

On the said first day of October, the defendant paid his rent to the plaintiff, upon these premises, up to that day, which was the end of his regular quarter. At this time there was a talk, between the plaintiff and the defendant, about the possession of the premises, in in which the defendant claimed that the plaintiff assented that he might remain in possession for a reasonable time, or until he could conveniently get out, while the plaintiff claimed that he told the defendent that he would not have him remain, on any conditions, after October first, as he wanted to make repairs immediately.

It appeared that no notice was ever served upon the defendant to quit the premises, nor was any demand made upon him for possession of the same, at any time. The defendant left the premises finally Nov. 23, after the sale, and within six months after the conversation he had with said Daniell before the sale. It appeared that Davis had offered to pay the plaintiff rent for the time he occupied the premises after October 1, and had tendered him a certain amount, less than a quarter's rent but more in proportion to the time, than he had been paying prior to Oct. 1, which the plaintiff declined to receive.

The plaintiff claimed that he had purchased the premises for the purpose of opening a hotel; that extensive repairs were necessary to put the buildings in proper condition for use, of all which the defendant had knowledge; and he claimed special damage for being kept out of possession of his property, from October 1st to the time the defendant left, as it obliged him to make these repairs—such as painting, papering, stone masonry, out-of-door carpenter work, and preparing water cisterns and pipes—at an increased expense, being done in cold weather, above what they would have cost if they could have been made in October; and as it prevented him from making said repairs seasonably so as to open his house as a tavern before spring. Whereas if he could have had possession on the first of October, he could have got his repairs made so as to have opened his house in the fall or early winter. And also, that he was obliged to pay high rents for premises to live in, while he was thus prevented from occuping his own.

After the plaintiff had closed his evidence, the defendant moved the court for a nonsuit for the following reasons:

I. If the plaintiff has any remedy, he has misconceived it, and this *form* of action can not be maintained.

II. But if this form of action will lie, the plaintiff can not recover, because, upon the evidence,—

1. The defendant was a tenant at will after Oct. 1.

2. If the defendant was a tenant at will neither this nor *any* kind of action could be maintained until after a demand of possession had been made upon him, or a proper notice served upon him to quit the premises; neither of which was done.

3. The plaintiff can not recover damages unless he shows that the

defendant unreasonably and willfully retained possession of the premises, or that some special damage happened to the premises through the negligence or gross carelessness of the defendant.

4. The plaintiff assented to the continuance of the defendant's possession after Oct. 1, and can therefore recover no damages for any cause stated in the declaration or sustained by the evidence. The wrong, if any, became purged by the assent.

5. If the plaintiff did assent, the defendant could not be a tenant at sufferance, but would stand in the same relation to the plaintiff as he did up to Oct. 1.

6. The promise to go out Oct. 1, alleged by the plaintiff, is not sustained by the evidence ; but if it is, it was made without sufficient consideration, was not binding *upon* and could not be enforced *against* the defendant.

7. The plaintiff has no greater rights than his grantor had, and the defendant's promise is no more available to him than to the grantor. The defendant's rights remained unchanged by the sale.

8. Rent can not be recovered in this case.

The motion for a nonsuit was overruled, subject to exception, and the defendant then introduced his testimony.

The court instructed the jury that this was not an action to recover rent for the use and occupation of the premises, but to recover special damages, which the plaintiff alleged he had suffered in consequence of the breach of the defendant's promise to quit the premises by a day certain. That if the jury should find that the agreement in regard to the defendant's quitting the premises was substantially as claimed by the defendant, that the plaintiff could not recover in this action ; or if they should find the original agreement of the defendant to be as claimed by the plaintiff, still, if the plaintiff, on the first day of October, consented or assented to Davis remaining n possession still longer, upon any terms, then the plaintiff could not recover in this case.

But if they should find the original agreement of the defendant to have been what the plaintiff claims it was, and that the plaintiff had not afterward made or assented to any different arrangement, then the plaintiff might recover what damages he had actually suffered in the several ways claimed by him as before stated.

That if the defendant's promise and agreement was as claimed by the plaintiff, and was stated by Davis at the sale, or by the auctioneer, with Davis' full knowledge and assent, and was acted on by the plaintiff in purchasing the premises, the defendant would be bound by his said promise ; at least, that he could not be heard to deny that it was founded upon a sufficient consideration as against this plaintiff.

To these instructions, so far as they related to the damages and to the defendant being estopped to deny that this agreement and promtse was without considerrtion, the defendant excepted.

Verdict for the plaintiff for $200, which the defendant moved the court to set aside.

*Pike & Blodgett*, for the defendant.

I. The plaintiff has not the same rights as he would have against a stranger, because the defendant being once in possession by a lawful title, the law supposes him to continue upon a title equally lawfuly, unless the owner by some *public* and *avowed act*, shall declare his continuance to be tortious ; 2 Bl. Com. 150 *Rising* v. *Staunwood*, 17 Mass. 288 ; such act the case does not find.

II. Whether the right to six months notice was, or not waived by the defendant, the plaintiff to be entitled to damages, should have given notice that he should hold him responsible as a wrong doer after Oct. 1 ; demanded possession or given a notice to quit. Until this was done or an entry was made, the holding would not be tortious. The plaintiff did nothing, and therefore the defendant's continuance in possession would not be wrongful nor subject him to damages.

No demand of possesion or notice to quit being made or given, the law will suppose the tenant to hold on the terms of the expired lease. *Riggs* v. *Bell*, 5 D. & E. 471 ; *Diller* v. *Roberts*, 13 S. & R. 60 ; *Bacon* v. *Brown*, 9 Conn. 334. It was the folly of the plaintiff to suffer the defendant to remain in possession. He had an ample remedy both by statute and at common law, but has pursued neither. His conduct shows a tacit consent to the continuance of the defendant's possession ofter Oct. 1. The defendant so understood it, and properly made a tender of the amount due for rent. To now allow the plaintiff to recover six times the amount of the rent is to permit him to take advantage of his own wrong and negligence, and would be a hardship upon the tenant which the law will not tolerate.

III. It is settled by all the authorities that an owner cannot maintain an action of trespass against his tenant by sufferance until after making an entry or the performance of some public and avowed act equivalent to an entry.

Even at common law, a demand of possession was always required before the tenant by sufferance could be ejected.

Taylor's Landlord and Tenant, Sec. 63, *Doe. ex, dem. Harrison* v. *Munell*, (8 C & P. 134) ; and under our statutes, tenants by sufferance are entitled to notice to quit the same as tenants at will ; Gen. Stats. 231 §1.

We contend that the same requisites of demand of possession &c., are required in case for damages, as in trespass ; and that, in this respect, there is no distinction between the two actions.

IV. The plaintiff has no remedy, but if he has, this form of action does not lie. The tenant at most simply held over. No case is found where such an action as the present has been maintained, without demand or notice.

If the tenant *refuses* to surrender the premises at the expiration of his term, he will be liable to an action of trespass,

Taylor's Landlord and Tenant, Sec. 524 ; see also 3 Bl. Com. 211 ; 4 Kents Com. 120 ; Sedgwick on Damages, 3d Ed. 150 note.

V. Suppose the defendant did promise absolutely to leave Oct. 1, no consideration existed for the promise nor did any appear in evidence. The undertaking to leave was gratuitous merely, and renders invalid the defendants alleged obligation, and cannot be enforced against him. See 1 Ch. Pl. 136 and cases cited.

VI. Rowell's statement "that he should not have bid upon the premises at all, but for the fact that he was to have possession by the first day of October was improperly received and not competent under the declaration.

VII. The defendant having admitted that the plaintiff was the owner of the premises and had a good title thereto the plaintiff's deed was improperly received in evidence and should not have been taken by the jury to their room.

The only purpose in offering it must have been to prejudice the defendant, and such would be the effect notwithstanding the instructions of the court.

VIII. The instructions as to damages were not correct. Part of the damage alleged was not " the natural and proximate consequence of the act complained of;" and from the excessive verdict rendered it is evident that the jury must have considered and passed upon the prospective profits the plaintiff would have made in the hotel business during the time he claims he was illegally held out by the defendant up to the next spring, when the house was opened as a hotel.

The declaration does not allege damages for the increased expense of the repairs, or for not being able to open the house as a hotel before spring, yet the court instructed the jury that the plaintiff could recover for both. See generally, 2 Gr. Evid. sec. 256; Sedgwick on Damages, 69–115 and cases cited; 2 Parsons on Contracts. (4th Ed.) Ch. 8, sec. 5; *Stevens* v. *Lyford*, 7 N. H. 360; *Troy* v. *Cheshire R. R.*, 23 N. H. 101; *Woodbury* v. *Jones*, 44 N. H. 211; *Lake* v. *Damon*, 17 Pick. 284.

*Barnard & Sanborn*, for the plaintiff.

The defendant claims the plaintiff is without remedy for the damages in this case, which have been sustained by him. We suggest in reply to this position;

1. No relation of landlord and tenant, existed in fact, between these parties; the owner sold at auction; he encumbered his offer of the property with such terms, conditions, and reservations, as he saw fit. He might have reserved the premises to himself for life, or a term of years, or as he did do, reserve the occupancy thereof, until October first for his tenant Davis. The purchaser, whoever he might have been, could not dictate as to what part of the estate should be sold, nor as to the reservations and conditions annexed to the sale, if he bid, he did so with a full knowledge of incumbrances; nor did such occupant become by this act of the owner, a tenant to the purchaser; for it is elementary, that the relation of landlord and

tenant, subsists by virtue of a contract, and is based upon occupancy by the tenant, coupled with and depending upon the consent, express or implied, of the owner or some person holding a superior title. Davis had the right to stay until October 1, not by virtue of any agreement with, or consent of the purchaser, but by virtue of his agreement with Daniell, which was incorporated by him into his offer of the property, and subsequently, into the deed to the plaintiff. The fact that the rent was to be paid to the purchaser, does not change the relation of the parties, for that was only a compensation for interest until the purchaser was entitled to possession, and moreover was an arbitrary act of the seller, incorporated by him into the terms of sale.

2. " The provisions of the 209th chap. of the Revised ˙Statut˱s for the relief of landlords, are applicable in those cases only, in which the relation of landlord and tenant is shown."

3. The defendant was a tenant at sufferance, which at common law consisted in retaining the possession of the premises as a wrong doer, just as a disseizor acquires and retains his possession in wrong. *Fabyan* v. *Russell*, 34 N. H. 224. Such a tenant has only a naked possession and no estate which is capable of enlargement by release : for he stands in no privity to his landlord. IV Kent Com.* p. 116–17.

4. Had the plaintiff consented to the defendant's occupancy, the wrong would have been purged, and the defendant might have been a tenant at will, and thus entitled to notice to quit. *Fabyan* v. *Russell*, before cited, 224, and authorities there cited. But the jury found under the instructions of the court, that the plaintiff did not consent to the defendant's remaining in possession after the first day of October. There being no such assent, the defendant is entitled to notice to quit. Ibid. and authorities cited, IV Kent Com.* p. 117.

5. " A tenant at sufferance until the landlord enters upon him, is not liable to an action of trespass, but he is still answerable for any damages growing out of his interference with the property, as a disseizor would be who is responsible for any damages occasioned by his conduct, whether willful or negligent. An action on the case is the proper remedy for any such injury," *Fabyan* v. *Russell*.

6. As to the defendant's position under the fifth and eighth heads in his brief in regard to damages, we assert that the plaintiff has greater rights as against the defendant, than his grantor had. The defendant was Daniell's tenant, and only owed him rent for the premises ; while as to the plaintiff, he was holding wrongful possession of property bought for a specific purpose of which he had full knowledge, and the two hundred dollars found by the jury was in fact but a portion only of the actual damages sustained. He was a wrong doer, and as the law is stated in *Fabyan* v. *Russell*, before cited, p. 225, " is responsible for any damages which result from any of his wrongful acts," whether willful or negligent.

7. The deed was admitted under proper instructions from the court. The statement of Rowell was properly admitted as bearing on the question of damages.

FOSTER, J.   This action is brought to recover special damages which the plaintiff says he has sustained by reason of a breach of the defendant's promise to deliver to him possession of the premises on the first day of October.

The defendant says that if the plaintiff has any remedy he has misconceived it, and this *form* of action cannot be maintained.

We entertain a different opinion, and conceive that if the plaintiff. is entitled to recover upon the merits, an action upon the case is his appropriate remedy.

It was so considered in *Russell* v. *Fabyan*, 34 N. H. 225, which was *case*, alleging that the defendant, having been a tenant of a certain hotel for a term which expired on a certain date, wrongfully continued to occupy the same after the lease expired, &c.   See also *West* v. *Trende*, Cro. Car. 187 ; 1 Sel. N. P. 452 note 3.

Under the instructions of the court, the jury must have found the facts to be as claimed by the plaintiff, namely : That the defendant agreed with Daniell, before the sale, that he would leave the premises on or before the first day of October, so that the purchaser might have possession on that day ; that, at the auction, among other restrictions and conditions annexed to the sale, were these : That the purchaser should have possession on or before the first day of October, the defendant in the mean time paying to the purchaser the same rent as has been previously paid to Daniell, for the remainder of the term ; that the defendant, being present, stated that the purchaser should have possession by the day named, and that the sale was made upon these conditions, with the defendant's full knowledge and consent.   They must, also, have found that the plaintiff never subsequently assented to a continued possession by the defendant after October 1st ; but, on the contrary, told him, at that time, that he would not have him remain longer on any condition, as he wanted to make repairs immediately.

What, then, was the relative condition, and what were the relative rights and obligations of these parties after Oct. 1st?   The defendant claims that he was a tenant at will to the plaintiff ; and as such tenant entitled to notice to quit, before he could be required to leave the premises, or be held responsible for damages on account of his continued possession ; while the plaintiff basis his right of recovery upon grounds entirely independant of any question concerning the relationship of landlord and tenant, and says it is quite immaterial whether any such relationship existed between the parties.   And he does not seek to recover possession nor rent, but special damages, suffered in consequence of defendant's breach of his promise to quit the premises by a day certain.

In the view which we take of the whole matter, it seems to us quite unnecessary to encumber the case with any consideration of the relationship of landlord and tenant, or to inquire whether such was or was not the relative situation of these parties after the first of October ; and, therefore, we need not determine whether or not the defendant's promise to vacate the premises by the first of October,

operated as a waiver of the right to require demand of possession and notice to quit.

And, for the purposes of this case, we may concede that the defendant was the tenant at will of the plaintiff; that he could not be ousted in any other manner than in accordance with the forms and rules applicable to the condition of such a tenancy, and that neither rent nor damages in the nature of rent can be recovered in this action; and also that a promise to vacate the premises by a day certain will not operate as a waiver of the statutory requirements of demand and notice.

But it is urged by his counsel, in argument, that the defendant's promise to deliver up the premises on or before the first of October, was a mere *nudum pactum*, having been made without sufficient consideration, and that, therefore, this action, resting upon such promise, must fail.

Upon this point the court instructed the jury that " if the defendant's promise and agreement was as claimed by the plaintiff, and was stated by the defendant at the auction, or by the auctioneer, with the defendant's full knowledge and assent, and was acted upon by the plaintiff, in purchasing the property, the defendant would be bound by his promise; at least, that he could not be heard to deny that it was founded upon a sufficient consideration, as against this plaintiff."

To these instructions, so far as they relate to the defendant's being estopped to deny that his agreement and promise were without consideration, the defendant excepted.

We are inclined to think that these instructions go to a further extent then the occasion demanded; that it would have been sufficient for the court to have stopped with instructing the jury that if the defendant made the promise as claimed by the plaintiff, and the plaintiff was induced thereby to purchase the property, and did so purchase it, the defendant would be bound by his promise; and that there was no occasion for the court to go further than this, and to add, " at least, that he could not be heard to deny that it was founded upon a sufficient consideration, as against this plaintiff."

The first branch of the instructions we regard as entirely correct. It applies, and in the explicit language of the court is made applicable only to the case of the jury finding, as matter of fact, that the defendant's promise and agreement was as claimed by the plaintiff, and was acted upon by the plaintiff in purchasing the premises.

In such case, the defendant would be bound by his promise, said the court; that is, in other words, there was a good and sufficient consideration for it.

It is elementary that a sufficient consideration arises to support a promise whenever the promissee, by reason thereof has been put to any expense or inconvenience, however trifling. Chitty Cont. 28.

And it has been held in a case where, in order to facilitate the making of an agreement, for which there was a sufficient consideration between the plaintiff and a third person, the defendant, who personally received no benefit from the agreement, became a party

thereto ; that, as the agreement was such as the plaintiff would not have made, unless the defendant had acceded and become a party to the contract, there was a sufficient consideration for the promise of the latter. *Bailey* v. *Croft*, 4 Taunt. 611 ; *Mocalta* v. *Francis*, 3 Dougl. 11.

So here, there can be no doubt, as matter · of law, that if the plaintiff acted upon the faith of the defendant's promise, and so purchased the estate, or gave a larger price for it than he would otherwise have given, there was a sufficient consideration for the defendant's promise.

When the court said, therefore, that under these circumstances the defendant would be bound by his promise, it is the same thing as saying that the promise was founded upon a sufficient consideration ; and so, we cannot doubt, the jury must have understood it ; and when the court went further, and said in substance, there being a good consideration proved, the defendant cannot be heard to say it was *not* a good consideration, the cause of the defendant is not prejudiced nor weakened thereby, nor is the charge to the jury any the less favorable to him therefor.

The instruction is neither more nor less than this : " If you find certain facts to exist, the defendant is bound by his promise, and he cannot say that he is not."

With regard to the legal admissibility of the plaintiff's title deed, we can entertain no doubt. The plaintiff had the right, notwithstanding the defendant's admissions, to put his record evidence before the jury and into their possession, in the usual way ; and, under the plain instructions of the court, it was impossible for the jury to be misled by any statement concerning the reservation, contained in the deed.

Another question relates to the admissibility of Rowell's declaration, to the effect that he should not have bid upon the property at all, but for the fact that he was to have the possession by the first day of October. Rowell was the plaintiff's agent in the purchase, and testified concerning the terms and conditions of the sale, as stated at the auction, both by the auctioneer and by the defendant. And his own part in the transaction, his acts, his sayings, his motives and intentions were those of his principal ; for whatever is done by an agent in reference to the business in which he is at the time employed, and within the scope of his authority, is said or done by the principal ; and may be proved, in all respects, as if the principal were the actor or the speaker. *Am. Fur. Co.* v. *The United States*, 2 Pet. 364 ; Cliquot's Champagne, 3 Wallace 140.

The declaration alleges that the defendant promised to quit the premises and that " the plaintiff, *relying on the promises of said defendant*, as aforesaid," became the purchaser. This was a material allegation, and one required to be proved affirmatively, as much as the allegation of the defendant's promise itself ; for if, notwithstanding the promise, the plaintiff did in fact purchase at his own risk, independantly of the promise, and not relying and acting upon it, he

cannot recover. But how can this allegation be sustained, otherwise than by the direct testimony of the plaintiff, or of his agent, as to the effect of the promise, operating upon his mind, as a controlling motive or inducement for the purchase?

The mere intention of a party, not manifested by, nor accompanying, any act or declaration, is, in general, not admissible to affect the rights of another, but when the intention of a party becomes material, it may be shown, either directly or from circumstances; and the party himself, if a competent witness, may testify to his intention, unless prevented by some other principle of law applicable to the particular case. *Hale* v. *Taylor*, 45 N. H. 407, and cases cited; *Norris* v. *Morrill*, 40 N. H. 401; *Furbush* v. *Goodwin*, 25 N. H. 451; *Graves* v. *Graves*, 45 N. H. 323; *Gilman* v. *Moody*, 43 N. H. 244; *Delano* v. *Goodwin*, *ibid* 203; *Cram* v. *Hadley*, 48 N. H. 191.

The witness says he would not have purchased, but for the defendant's promise, and the evidence amounts to precisely this: That the plaintiff, through his agent, was induced thereby, to purchase the property, and thus, and thus only, save by independant circumstances, the essential affirmative allegation of the declaration is sustained.

In another view the evidence was properly admitted. The main issue was as to whether or not the defendant promised, as the plaintiff alleged. The plaintiff's evidence tended strongly in one direction, that of the defendant tended perhaps as strongly in the opposite direction; and being thus conflicting, it was for the jury to find the fact to be either one way or the other, according to the preponderance of the evidence; and if the direct evidence was evenly balanced, then they must consider and weigh the probabilities. And the testimony of the witness that he should not have bid upon the property at all, but for the assurance then given that he should have possession of the property by the first day of October, tended to show whether it was more probable than otherwise that such assurance was made. It was upon this principle that in a case where the parties were in direct conflict with regard to the price agreed upon in an admitted contract for the hiring of certain services, evidence was held to be admissible, not as upon *quantum meruit* but as bearing on the probabilities of the case, to show what was the usual and common price paid at that time and place for similar services. *Swain* v. *Cheney*, 41 N. H. 232.

And, in another case, where the testimony was conflicting as to the price agreed upon in a sale of personal property, it was held competent to show the value of the property at the time of sale as tending to show what the real contract was, *Kidder* v. *Smith*, 34 Vt. 294. We perceive no error in the instructions with regard to damages.

The declaration alleges, among other things that by reason of being kept out of the premises two months, the plaintiff was prevented from making suitable and proper repairs, on said buildings,

which repairs were absolutely necessary. The evidence is that' being kept out of the occupation of the premises during these two months, he was obliged to make these repairs at an increased expense (being done in cold weather), above what they would have cost if they could have been made in October, and as it prevented him from making said repairs seasonably so as to open his house as a tavern before spring—whereas if he could have had possession on the first of October he could have got his repairs made so as to have opened his house in the fall or early winter.

The jury were at liberty to find as a result of the breach of the defendant's agreement, whereby the plaintiff was excluded from the occupation of the premises till the first of December, that the essential repairs made after that time, prevented the profitable use of the premises till spring—such damages were the fair, legal and natural result of the injury complained of, and they are sufficiently alleged in the plaintiff's declaration. *Fabyan* v. *Russell*, 34 N. H. 225 ; Sedgwick on the Measure of Damages 65.

*Judgment on the verdict.*